## A99A2166. SIMS v. THE STATE.
### (530 SE2d 212)

SMITH, Judge.

Domingo Sims was convicted by a Chatham County jury of three counts of armed robbery. His amended motion for new trial was denied, and he appeals. Finding no error, we affirm.

1. Sims enumerates the general grounds. Construed to support the jury's verdict, the evidence showed that one of the victims drove into downtown Savannah with two of his friends as passengers. After parking, the three remained in the car listening to the radio. A man later identified as Sims tapped at the passenger's side window with a gun and ordered them out of the car. Once out of the car, the three were confronted by two men with guns. One was Sims wearing a bandanna over the lower portion of his face; the other was an unidentified man wearing a ski mask. The evidence showed that Sims took a wallet and cash from the passengers, while the other robber demanded the driver's wallet. The driver was "positive" in his identification of Sims as the robber wearing the bandanna. He particularly remembered his "very distinguishing" eyebrows and nose.

Shortly before the robbery, a witness drove upon the scene. He observed two men preparing what he believed to be disguises for a robbery. The witness noticed one man tying a bandanna around his face as he and another man got out of a green Jeep Cherokee. The witness drove around the block and surprised the two men at the victims' car; when he flashed his headlights, they fled. He was able to record the license plate number on the Jeep, and he reported the incident to the Savannah Police Department.

The victims identified the robber as a black man wearing a vertically striped yellow, blue, and white shirt with the words "South Pole" written on it. The police traced the Jeep to an apartment and were given permission to search by the tenant. Sims and several others were sleeping in the apartment. Police found a shirt identical to the one described by the victims in the "spare bedroom" in which Sims had been sleeping alone. Two ski masks and the wallets of two of the victims were also found in the same room. Of the three victims, only the driver was able to positively identify Sims in a photo lineup

and at trial as the robber wearing the bandanna. However, all of the victims identified the striped shirt worn by appellant. Two victims identified the wallets found in the room with Sims as their property.

The day after the robbery, the green Jeep was located, and a business card that had been in the driver's wallet was found inside. Sims gave a voluntary statement to police in which he stated that he was the only person in the spare bedroom.

The standard of review for purposes of sufficiency is whether a rational jury could have found Sims guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We must construe the evidence to support the jury's verdict and determine only whether the evidence was sufficient to enable a rational trier of fact to find Sims guilty of the crime of armed robbery. *Clark v. State*, 197 Ga. App. 318, 320 (1) (398 SE2d 377) (1990), aff'd, 261 Ga. 311 (404 SE2d 787) (1991).

The positive identification of Sims as one of the robbers by his victim sufficiently supported the jury's verdict. *Johnson v. State*, 213 Ga. App. 194, 195 (2) (444 SE2d 334) (1994). The testimony of the eyewitnesses and the physical evidence recovered from the apartment further supported a reasonable conclusion that Sims took the property of the victims with the intent to commit theft by use of a gun, an offensive weapon. OCGA § 16-8-41 (a). The evidence was sufficient to enable a rational finder of fact to conclude that Sims was guilty of the crime of armed robbery beyond a reasonable doubt. Id.

2. Sims contends that the trial court erred in admitting his statement to the police. He contends that he was under arrest at the time his statement was given and that *Miranda* warnings should have been given. We find no error for two reasons.

First, it does not appear that Sims preserved this issue for review. At the beginning of the trial, his counsel indicated that a *Jackson-Denno* hearing might be required at a later time, and counsel for the State disagreed, stating that Sims was not in custody and therefore no need existed for a hearing. Eventually, when the officer who took Sims's statement began his testimony, Sims's counsel approached the bench and stated, "It was my understanding that we were not going into that statement until we had a *Jackson-Denno* hearing." The trial court excused the jury and told counsel, "Let me hear outside the presence of the jury a little bit more about the facts and circumstances concerning the statements, and I'll make a decision on that." The State questioned the officer about the circumstances of the interview, and Sims's counsel then questioned the officer. But after concluding his questioning, counsel simply stated, "Okay. Your Honor, there's one other thing that I would like to cover before the jury comes in." Shortly afterward, he asked a few more questions of the officer, but after each additional question, his only

response was, "Okay." While the trial court commented to Sims's counsel after the State's questioning of the officer, "I mean, there's nothing custodial about this whole situation at all," Sims's counsel never objected to Sims's statement on the basis of failure to give *Miranda* warnings, then or at any other time.[1]

In *Backey v. State*, 234 Ga. App. 265, 266 (2) (506 SE2d 435) (1998), a *Jackson-Denno* hearing was held regarding admissions made by Backey to the police. The trial court found that the statements were freely and voluntarily given, but Backey made no objection to their admission. We held that Backey had failed to preserve the issue for appeal: "In order to preserve an objection upon a specific ground for appeal, the objection must be made at trial upon the specific ground. As such, Backey has waived the right to raise such issues before this Court." (Citation and punctuation omitted.) Id.

As in *Backey*, moreover, even if Sims had preserved this issue for appeal, it is without merit. "Factual and credibility determinations made by a trial court after a *Jackson v. Denno* hearing will not be disturbed on appeal unless they are clearly erroneous." (Footnote omitted.) *Dixon v. State*, 267 Ga. 136, 139 (3) (475 SE2d 633) (1996). To the extent that the trial court ruled in the absence of an objection on this basis by Sims at trial, it found that the police questioning of Sims was not custodial.[2]

"The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous. [Cit.]" *Johnson v. State*, 234 Ga. App. 116, 118 (2) (506 SE2d 234) (1998).

> In determining whether [a suspect] was in custody [for *Miranda* purposes], a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

(Citations and punctuation omitted.) *Stansbury v. California*, 511 U. S. 318, 322 (114 SC 1526, 128 LE2d 293) (1994); *Manchester v. State*, 226 Ga. App. 653, 655 (1) (487 SE2d 449) (1997).

Sims and the other occupants of the apartment were questioned at the police station, but Sims was not arrested or forcibly detained

---

[1] The transcript reveals that the primary aim of Sims's counsel was the exclusion of Sims's statement to police that he had been arrested for armed robbery the year before. Counsel was successful in excluding this remark.

[2] The trial court also ruled in response to Sims's motion for new trial that "[d]efendant's assertion that he was in a locked room during questioning has absolutely no basis in fact."

at that time. One of the interviewing officers, Detective Doyle, testified that those questioned were not under arrest and were free to leave at any time. Doyle added that one of those at the station actually left before he was questioned. Doyle directly contradicted the claim made by Sims's counsel that the door to the interview room was locked, stating, "We don't lock those doors. I've been up there for a long time now and never once [has] one of those doors ever been locked." Detective Doyle also testified with regard to the assertion made by Sims's counsel that a videotape showed an officer knocking on the door of the interview room from the inside. In the officer's opinion, this was not because the door was locked but because the other occupants of the apartment were congregated in the hall outside the interview room as they awaited their turn to be interviewed, and the officer "wanted to let them know he was coming out and maybe they didn't want somebody to hear what was going on." Finally, after the session, none of those who were questioned were arrested, and the police offered a ride home to each, including Sims, who apparently declined.

Sims's reliance on *State v. Wintker*, 223 Ga. App. 65 (476 SE2d 835) (1996), is without merit. *Wintker* involved a defendant involuntarily confined in the back of a locked police car with the driver of her parents' car, who had been handcuffed and placed under arrest, while the police searched the car. Id. at 69. Not only are the facts in *Wintker* significantly different from those presented here, we examined those facts deferentially in light of the trial court's ruling in favor of the defendant in that case.

Sims was asked to come down to the police station for questioning in an interview room, was told that he was free to leave, and in fact left after questioning without being charged or detained. He was not "in custody" for purposes of *Miranda*. See *Hendrix v. State*, 230 Ga. App. 604, 605-606 (1) (497 SE2d 236) (1997). The trial court's finding that Sims was not in custody was not clearly erroneous.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 22, 2000 — 

*C. Jackson Burch, Emory B. Bazemore*, for appellant.

*Spencer Lawton, Jr., District Attorney, Melanie Higgins, Assistant District Attorney*, for appellee.