A01A1252. MAX v. THE STATE.
(549 SE2d 510)

ELDRIDGE, Judge.

A Dade County jury found Chad Michael Max guilty of two counts of child molestation for acts he perpetrated on his minor stepdaughter. He appeals and claims as his sole enumeration of error that the trial court erred in permitting his allegedly custodial statement to go before the jury, because it was made without benefit of *Miranda*[1] warnings. Since the trial court's conclusion that Max's statement was noncustodial is not clearly erroneous, we affirm.

Allegations of child abuse by Max against his stepdaughter were made in DeKalb County, Alabama. The incidents of abuse allegedly occurred in Deer Head Cove, Alabama. The record shows that, when allegations of child abuse are made in Alabama, the state Department of Human Resources ("DHR") assigns a social worker to investigate the claims. The DHR social worker and a sheriff's investigator work child abuse cases together "ninety-nine percent" of the time. In such instances:

> we sit down with folks and interview them, there's exceptions to every rule, but our customary practice is to get a statement from a defendant in a case, when that's gotten and all the information is gathered up then we sit down with the D.A. The D.A. reviews it and he decides whether or not to prosecute it and the warrant's issued, we call the folks up and say a warrant was issued for you, this is the amount of your bond, come turn yourself in. If he had an attorney, we contact the attorney.

In furtherance of this procedure, the DHR social worker assigned to Max's case interviewed Max's stepdaughter and then called Max's wife: "I specifically remember speaking to Mrs. Max and asking her to speak to Mr. Max and come in and speak with me." Thereafter, Max spoke with the social worker, who asked him to

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

come to the DeKalb County Sheriff's Office for a further interview. Max stated:

> He [social worker] actually gave me, on a piece of paper he wrote down his phone number and he told me that — this was on like a Thursday, he told me that at the beginning of next week to please contact him so that he could arrange a meeting with the Sheriff's investigator. The following Monday I called and he told me that he hadn't had a chance to talk with anyone yet, so I called Tuesday and he said that it would be — the interview would be set up for two o'clock on Wednesday.

Max and his wife arrived at the scheduled time on September 2, 1998. His wife waited on a bench outside the investigator's office door while Max went inside the office. In testimony, the office was likened to the small chambers of a judge, with books, a desk, and chairs. After Max entered, the office door was closed but not locked.

Prior to the start of the interview, Max was informed that he was not under arrest and would not be arrested that day as a result of the interview. *Miranda* rights were not given. The subsequent interview lasted between 15 minutes and an hour. Max was questioned about the Deer Head Cove, Alabama, incident, as well as about an instance of inappropriate touching that allegedly occurred while Max and his stepdaughter were living in Trenton, Dade County, Georgia. Both the sheriff's investigator and Max became upset during the course of the interview. Max stated, "He became agitated with me and then I basically became agitated back with him, told him I could see — I could say it my way and he was not happy with my responses." Despite the agitated interview, neither the social worker nor the investigator ever mentioned arresting Max. Max's responses to the interviewers' questions were reduced to a summary statement, which Max read, initialed, and signed. In his statement, Max justified his actions with his stepdaughter in Deer Head Cove, Alabama, as an attempt "to teach her a lesson in reference to rape[, because] a thirteen year old female was raped in our community some time earlier." But he admitted that he touched his stepdaughter on the breast for a "few seconds" in Trenton, Georgia, and was "very ashamed and remorseful re: the incident." At the conclusion of the summary, Max also wrote and initialed the statement that "I am not under arrest at the time of this statement."

Max then left the sheriff's office with his wife. No charges were ever filed with regard to the Deer Head Cove, Alabama, incident, and Max was never arrested with regard thereto.

However, the Alabama DHR social worker sent to the Dade

County, Georgia, Sheriff's Department a copy of his written report, his videotaped interview with Max's stepdaughter, and a copy of Max's statement. A Dade County sheriff's investigator was assigned to the case. Following the completion of her investigation, a warrant was issued on October 6, 1998, for Max's arrest — some four weeks after the Alabama interview.

Following a *Jackson-Denno*[2] hearing, the trial court determined that Max's Alabama statement was noncustodial and, thus, the failure to give *Miranda* rights did not preclude admission of the Alabama statement. *Held*:

"The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous."[3]

> For the proscriptions of *Miranda v. Arizona*[4] to apply, a person must be taken into custody or otherwise deprived of his freedom of action in some significant way. In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.[5]

Here, the DeKalb County, Alabama, sheriff's investigator and the Alabama DHR social worker testified at the *Jackson-Denno* hearing. Both men stated that, at the time of the interview in question, Max was not under arrest and had been told that he was not under arrest. Max wrote and signed a statement acknowledging he was not under arrest at the time of the interview. Max came to the sheriff's office voluntarily with full knowledge of the allegations against him, since the social worker had spoken to him the week before. Clearly no great urgency prevailed, since the social worker contacted Max through his wife and rescheduled the sheriff's office interview at least once. Max's wife accompanied him to the interview and was right outside the room during questioning. The office door was open initially, and Max "just walked into my [investigator's] office. Our office is open, it's very informal, there's no locked doors you have to go through to get to our offices." The door, although shut, was never

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[3] (Citations and punctuation omitted.) *Sims v. State*, 242 Ga. App. 460, 462 (2) (530 SE2d 212) (2000); accord *Sams v. State*, 239 Ga. App. 715, 717 (2) (521 SE2d 848) (1999); *Brown v. State*, 262 Ga. 833, 834-835 (6) (426 SE2d 559) (1993).

[4] *Supra*.

[5] (Citations and punctuation omitted.) *State v. Kirbabas*, 232 Ga. App. 474, 475 (502 SE2d 314) (1998); *Sims v. State*, supra at 462.

locked. And the investigator testified that if Max had requested to end the interview, it would have ended. There is no evidence that Max was in any way physically restrained or unable to leave the interview room. In fact, Max left after the interview and was never arrested in Alabama. He was only arrested in Georgia a month later, after a full *second* investigation by the Dade County Sheriff's Office. While Max testified at the *Jackson-Denno* hearing that he felt he was not free to leave in the middle of the Alabama interview, that he was intimidated, and that he was very upset, he also admitted that neither the social worker nor the investigator ever mentioned he was under arrest. Max stated, "No, sir, he didn't say anything about arresting me."

Under the totality of the circumstances, we conclude that Max was not deprived of his freedom of action in some significant way, nor was there a restraint on Max's freedom of movement of the degree associated with a formal arrest.[6] Accordingly, the trial court's determination that Max's Alabama statement was noncustodial is not clearly erroneous, and *Miranda* does not preclude its admission.[7]

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED MAY 24, 2001.

*John R. Emmett,* for appellant.

*Herbert E. Franklin, Jr., District Attorney, Elizabeth O. Evans, Assistant District Attorney,* for appellee.

---

[6] *State v. Kirbabas,* supra at 475; *Sims v. State,* supra at 462.

[7] *Sams v. State,* supra at 717; *Lancaster v. State,* 240 Ga. App. 359, 362 (522 SE2d 30) (1999); *State v. Walker,* 204 Ga. App. 1, 2 (418 SE2d 384) (1992).