A03A0454. BLACK v. THE STATE.
(582 SE2d 213)

RUFFIN, Presiding Judge.

A jury found Henry Allen Black guilty of molesting his stepdaughter, A. H. Black appeals, challenging the denial of his motion for directed verdict, as well as the admissibility of his statements to

---

police. He also argues that the proceeding violated his rights to confrontation and a fair trial. For reasons that follow, we affirm.

1. In reviewing the denial of Black's directed verdict motion, we must construe the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found Black guilty beyond a reasonable doubt.[1] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld."[2]

Viewed in this light, the evidence shows that 13-year-old A. H. lived with her grandmother. On April 8, 2000, she spent the night with her mother and Black to celebrate her upcoming birthday. That night, all three slept in the same bed, with A. H.'s mother between Black and A. H. At some point during the night, Black reached under A. H.'s shorts and touched her "private area." A. H. left the bedroom and lay down on the sofa in the living room. Black followed her and asked whether she wanted him to touch her. Although A. H. responded negatively, Black placed his hands under her shirt.

A. H.'s mother walked into the living room a short time later and discovered Black kneeling next to A. H. Black returned to the bedroom, and A. H. told her mother what had happened. According to A. H., Black then apologized to her and told her that he would not " 'do it again.' "

One month later, A. H. reported the incident to a counselor, who notified the police. A. H. spoke with several investigators and described the touching. The record shows, however, that she subsequently wrote several letters to the prosecutor, recanting her statements and claiming that she fabricated the incident. Nevertheless, she testified at trial that Black, in fact, touched her and explained that she wrote the letters because she did not want to testify. She also claimed that she sent several of the letters at her mother's request.

On June 8, 2000, Detective Rene Swanson interviewed Black. During the interview, Black indicated that A. H. would not lie about the incident, but that "if he touched her, he didn't realize it." According to Detective Swanson, Black further stated: " '[A. H.] is small. [S]he's petite. . . . I just love watching her. I love watching her ride the lawn mower. I love watching her do her chores and stuff around the house.' " At the end of the trial, the State also introduced evidence that Black had previously pled guilty to molesting A. H.'s sister.

---

[1] See *Roberts v. State*, 258 Ga. App. 107 (1) (572 SE2d 744) (2002).

[2] Id.

On appeal, Black argues that the trial court erred in not directing a verdict of acquittal because the State failed to disprove his defense of accident or mistake and did not prove criminal intent. We disagree. Given the evidence presented, including A. H.'s testimony that Black reached inside her shorts, touched her private area, asked her whether she wanted him to touch her again, and placed his hands under her shirt, the jury was authorized to reject his defense and find him guilty of child molestation beyond a reasonable doubt.[3]

2. Black also argues that the trial court erroneously admitted into evidence his statements to Detective Swanson because Swanson did not advise him of his *Miranda*[4] rights. He further claims that the statements were not voluntary. Again, we disagree.

"A person is entitled to *Miranda* warnings only if [he] has been taken into custody or deprived of freedom of action in a significant way."[5] Thus, in addressing the admissibility of pre-*Miranda* statements, the trial court must determine whether the defendant was in custody.[6] All of the circumstances surrounding the interrogation should be considered, "but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."[7] The trial court must consider "how a reasonable person in [the] suspect's position would perceive his situation."[8] We will not reverse the trial court's determination regarding police custody unless it is clearly erroneous.[9]

At a *Jackson-Denno*[10] hearing, the State presented evidence that Detective Swanson contacted the Blacks and explained that she wanted to interview them. They agreed to the interview and came that day to the police station. Swanson and another officer first spoke briefly with A. H.'s mother, and then interviewed Black in an office with the door closed, but unlocked, for ten to fifteen minutes. According to Swanson, she advised Black that they "were conducting an investigation into a child molestation case that named him." Black indicated that he was nervous because he had a previous child molestation conviction. He then made the statements discussed above regarding A. H.

Swanson testified that she did not threaten Black or promise

---

[3] See id. at 107-108; *Redd v. State*, 232 Ga. App. 666-667 (1) (502 SE2d 467) (1998); OCGA § 16-6-4 (a).

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[5] *McAllister v. State*, 270 Ga. 224, 227 (1) (507 SE2d 448) (1998).

[6] See *Sims v. State*, 242 Ga. App. 460, 462 (2) (530 SE2d 212) (2000).

[7] (Punctuation omitted.) Id.

[8] (Punctuation omitted.) *Hendrix v. State*, 230 Ga. App. 604, 605 (1) (497 SE2d 236) (1997).

[9] See *Sims*, supra.

[10] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

him anything in exchange for his cooperation. She also noted that he seemed to understand the interview questions, spoke clearly, and did not appear to be under the influence of drugs or alcohol. At the end of the interview, Swanson told Black that she planned to investigate the matter further and would contact him. Black then asked Swanson to call him "if it looked like there were going to be charges," and she agreed to do so.

Based on this evidence, the trial court concluded that Black was not in custody at the time he made the statements and that the statements were voluntary. We find no error. Despite Black's arguments, "[a] person is not in a state of custody merely because he is a prime suspect at the time he is interrogated by the police."[11] Furthermore, as noted above, Black asked the officers to call him *if* any charges were filed and left the police station. Obviously, therefore, he knew that no charges were pending. Given that knowledge, as well as the interview's brevity, his agreement to speak with the officers, and the lack of any evidence of coercion, the trial court's ruling was not clearly erroneous.[12]

3. Black also argues that the trial court violated his right to confrontation by not ordering the State to produce the victim's juvenile file. The record shows that, after A. H. reported the touching to her counselor, the State placed her in foster care and, at one point, requested that the court hold her and her grandmother in contempt for failing to appear at a court proceeding in this case. Pursuant to that request, the trial court ordered A. H. detained at a juvenile facility pending a hearing on the contempt motion.

Shortly before trial began, Black asked the State to produce all juvenile records and Department of Family and Children Services ("DFCS") records relating to A. H. under *Brady v. Maryland*.[13] The prosecutor responded that she did not have any such records in her possession, and the trial court did not order further production. On appeal, Black argues that the trial court erroneously deprived him of these records, which he would have used to impeach A. H.

To establish a *Brady* violation, Black must show

(1) that the State possessed evidence favorable to the defense; (2) that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence;

---

[11] *Hendrix*, supra.

[12] See *Max v. State*, 249 Ga. App. 719, 721-722 (549 SE2d 510) (2001); *Sims*, supra at 463; *Hendrix*, supra at 605-606; *State v. Walker*, 204 Ga. App. 1-3 (418 SE2d 384) (1992). Compare *State v. Wilson*, 257 Ga. App. 120, 126-127 (1) (570 SE2d 409) (2002) (trial court did not err in finding defendant in custody during three-hour interrogation).

[13] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

(3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.[14]

Black did not meet this burden.[15] He has not shown that the prosecution possessed the requested records or suppressed the evidence. He notes on appeal that A. H. was in State custody and that the detective who investigated the case contacted DFCS about placing her in foster care. Information only falls within *Brady*, however, "when it is possessed by the prosecutor or anyone over whom the prosecutor has authority."[16] Black has offered no evidence that the prosecutor actually had such records in her possession or exercised authority over officials within the juvenile detention system or DFCS that possessed information involving A. H.[17] And he has not presented any evidence to support his vague allegation that "A. H. may have had juvenile delinquency charges pending . . . which the State may have agreed to negotiate for her testimony."

Furthermore, even if the prosecutor possessed the DFCS and detention center records, no reasonable probability exists that the outcome of the trial would have been different had this information been produced. Although Black claims that he needed the information to impeach A. H., the trial transcript shows that he successfully cross-examined her about the custody situation, her failure to appear in court, her resulting detention in a youth facility, her efforts to recant her statements to police, and her motivation for testifying against Black. Even without the records, therefore, Black was able to

---

[14] *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994). See also *Tessmer v. State*, 273 Ga. 220, 225 (6) (539 SE2d 816) (2000).

[15] On appeal, Black relies heavily on *Mangum v. State*, 274 Ga. 573, 574-577 (2) (555 SE2d 451) (2001), arguing that, under *Mangum*, his inability to access these records violated his right to confrontation. In *Mangum*, however, the defendant did not seek the juvenile records under *Brady*. Rather, he asked the trial court to order production of the records, presumably from the juvenile authorities. Black made no similar request in this case, relying instead on his *Brady* motion. Thus, the *Mangum* decision, which does not involve a *Brady* analysis, is not controlling.

[16] (Punctuation omitted.) *Zant*, supra. See also *Harridge v. State*, 243 Ga. App. 658, 660-661 (1) (534 SE2d 113) (2000) ("For purposes of *Brady*, we decide whether someone is on the prosecution team on a case-by-case basis by reviewing the interaction, cooperation and dependence of the agents working on the case.").

[17] See *Zant*, supra. Compare *Harridge*, supra at 661 (given Georgia Bureau of Investigation laboratory's involvement in case, laboratory was part of prosecution team for *Brady* purposes). We note that Black clearly had access to and obtained the State's contempt motion, as well as the court's order that A. H. be detained until resolution of the contempt proceedings. The record shows that Black introduced copies of the motion and order as defense exhibits at trial.

explore the issues they purportedly addressed.[18] Accordingly, he has not shown that the absence of these records impaired his defense.[19]

4. Black further contends that the trial court erred in permitting the State to call A. H.'s mother as a witness "solely for the purpose of impeaching and discrediting her." We find no error.

The record shows that A. H.'s mother testified about the events of April 8, 2000. At one point, the prosecutor asked her whether A. H. had described the incident to her that night, and the mother responded negatively. The State subsequently presented the testimony of two investigators, who testified that the mother had told them that A. H. reported the touching to her.

Citing *Eberhart v. State*,[20] Black argues that he is entitled to a new trial because the State called the mother solely to impeach her. We disagree. As an initial matter, Black raised no contemporaneous objection to the mother's testimony, thus waiving this issue on appeal.[21] In order for there to be reversal, on this ground, there must be triangulation of error. That is (1) there must be error uninvited by and unmixed with the objector's conduct; (2) generally there must be a contemporaneous objection stating the proper grounds therefor; and (3) there must be harm as a result of the error.[22]

Moreover, we cannot find that the State called the mother solely for impeachment. She was present in the house at the time of the touching, gave a statement to police, and testified about the parties' relationships, their sleeping arrangements that night, and her discovery of A. H. and Black in the living room. The *Eberhart* decision does not require reversal.

Furthermore, under OCGA § 24-9-81, a party may impeach its own witness "where [it] can show to the court that [it] has been entrapped by said witness by a previous contradictory statement." The impeaching party need not establish *actual* entrapment or surprise.[23] Rather, the party has been "entrapped" when "at the time of the questioning, [it] has knowledge of a prior statement by one of [its] witnesses which contradicts testimony that witness has just given."[24] Such entrapment occurred in this case when the mother testified that A. H. did not report the touching to her. At that point, the State

---

[18] Compare *Mangum*, supra at 576 (trial court improperly restricted defense counsel's effort to show bias by cross-examining the State's witness about his juvenile record).

[19] See *Tessmer*, supra at 225-226; *Wallin v. State*, 248 Ga. 29, 32-34 (6) (279 SE2d 687) (1981).

[20] 121 Ga. App. 663, 665 (3) (175 SE2d 73) (1970).

[21] See *Harris v. State*, 257 Ga. App. 42, 45 (3) (570 SE2d 353) (2002). Although Black eventually raised this objection, he did not assert it until well after the mother finished testifying.

[22] See *Yang v. Washington*, 256 Ga. App. 239, 243 (2) (c) (568 SE2d 140) (2002).

[23] See *Park v. State*, 230 Ga. App. 274, 280 (6) (495 SE2d 886) (1998).

[24] (Punctuation omitted.) Id.

was authorized to impeach her with evidence of the prior contradictory statements.[25]

Black also argues that the trial court erroneously allowed the State to present evidence regarding the mother's motive for lying, which, he contends, is an improper basis for impeachment under OCGA § 24-9-81. Black, however, did not raise this objection below. Although he argued that the testimony required "mind reading" and asserted that the State should not be allowed to impeach its own witness, he never claimed that the testimony fell outside the scope of OCGA § 24-9-81. Accordingly, he has waived this alleged error.[26]

5. Finally, Black argues that the State violated his right to a fair trial by raising an inference that the mother tried to tamper with A. H.'s testimony. Again, we find no basis for reversal.

While questioning A. H. about her failure to appear at a previous court proceeding in the case, the prosecutor asked whether her mother had "take[n] [her] away from here so [she] would not be able to come and testify." Defense counsel objected to the question on hearsay grounds. Although the trial court sustained the objection, the prosecutor asked the same question several more times. Each time, the trial court admonished the prosecutor that the question was improper, and A. H. did not answer. When the prosecutor indicated that she did not understand the ruling, the trial court explained:

> Well, your question presumes that the purpose she was taken away was so she wouldn't testify in court. That may or may not be true. But [A. H.] may not have any way of knowing that. You may be asking something that she would just be giving an opinion about. You can ask her the time frame, if she left here, when she left and where she went, and the Jury can draw whatever conclusion they want to from it, if any.

Black raised no further objection, and A. H. testified that she was with her mother when she was scheduled to be in court.

Black claims that the trial court permitted the State to introduce extrinsic matters that inflamed the jury and prejudiced the defense. The record clearly shows, however, that the trial court sustained Black's objection, prohibited the State from questioning A. H. about her mother's motives, and admonished the prosecutor when she tried to do so. Black complains that the trial court failed to give a limiting

---

[25] See id.; *Morris v. State*, 228 Ga. App. 90-91 (1) (491 SE2d 190) (1997).

[26] See *Walker v. State*, 258 Ga. App. 333, 336 (3) (574 SE2d 400) (2002); *Clemons v. State*, 257 Ga. App. 96, 103 (3) (574 SE2d 535) (2002).

instruction. But he never requested such an instruction, and the trial court noted in open court that the jury could decide what conclusions, if any, to draw from the mother's actions.

"Trial courts have broad discretion in handling matters such as these and, here, the court granted the relief requested. In no case will the trial judge's ruling be reversed for not going further than requested."[27] Accordingly, this enumeration of error lacks merit.[28]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED MAY 14, 2003.

*Diane M. Moore*, for appellant.

*Tommy K. Floyd, District Attorney, Sandra G. Rivers, Thomas R. McBerry, Assistant District Attorneys*, for appellee.

---

[27] (Punctuation omitted.) *Roberts v. State*, 267 Ga. 669, 675 (9) (482 SE2d 245) (1997). See also *Woodham v. State*, 263 Ga. 580 (1) (a) (439 SE2d 471) (1993).

[28] In the argument section of his brief, Black also asserts that the trial court erred in several other ways, such as by admitting his prior criminal conviction into evidence and permitting the State to improperly bolster A. H.'s testimony. Black, however, did not enumerate these rulings as error, and "an appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of the errors." *Felix v. State*, 271 Ga. 534, 539, n. 6 (523 SE2d 1) (1999).