## A00A0838. HARRIDGE v. THE STATE.
(534 SE2d 113)

JOHNSON, Chief Judge.

Around midnight on May 17, 1998, 20-year-old David Harridge was driving his pickup truck eastbound on Highway 96 in Houston County. At the same time and on the same highway, Phyllis Smith and her uncle, Tony Ray, were heading westbound in their car. Smith was driving. As the vehicles approached each other, Harridge's truck crossed over the road's centerline and collided with Smith and Ray's car. Smith was killed and Ray was injured in the collision.

As a result of the accident, the state charged Harridge with driving under the influence of alcohol to the extent that he was a less safe driver, failing to maintain his lane, vehicular homicide in the first degree for causing Smith's death while driving under the influence of alcohol, causing serious injury by vehicle to Ray while driving under

---

[7] *Williams v. State,* 208 Ga. App. 572, 573 (2) (430 SE2d 883) (1993).
[8] See *Truax v. State,* 207 Ga. App. 506, 507 (1) (428 SE2d 611) (1993).

the influence of alcohol, and possessing alcohol while under the age of 21. Harridge denied the charges, and the case was tried before a jury.

Harridge's main defense at trial was that he was not under the influence of alcohol at the time of the accident. In fact, the state-administered test of Harridge's blood taken after the accident showed that he did not have any alcohol in his blood. And the state presented no evidence that at the accident scene Harridge exhibited any signs of being under the influence of alcohol, such as smelling of alcohol, slurring his words or being unsteady on his feet. Instead, the state presented two sheriff's deputies who testified that they saw beer and wine cooler bottles in Harridge's truck. The state also presented an eyewitness to the collision, who testified that immediately after the accident Harridge said that "earlier in the day he had been drinking." And the state introduced a 911 operator's testimony that several days after the accident Harridge told her that he had drunk three or four wine coolers the evening before the accident.

The jury found Harridge not guilty of driving under the influence of alcohol, vehicular homicide in the first degree and causing serious injury by vehicle. But the jury found Harridge guilty of possessing alcohol while under the age of 21, failing to maintain a lane and vehicular homicide in the second degree for causing the death of Smith by failing to maintain a lane.

Harridge moved for a new trial on various grounds. The court denied the motion. Harridge appeals from the denial of his motion for a new trial.

1. Harridge asserts that he is entitled to a new trial because the state violated *Brady v. Maryland*[1] by failing to inform him before the trial that preliminary state crime laboratory test results of Smith's urine showed the presence of cocaine and marijuana. We agree and therefore reverse Harridge's convictions of vehicular homicide in the second degree and its underlying offense of failing to maintain a lane.

Samples of Smith's blood and urine were sent to the Georgia Bureau of Investigation laboratory to be tested for the presence of drugs and alcohol. On September 3, 1998, Harridge filed a *Brady* motion asking for, among other things, all evidence in the custody of the GBI laboratory. Sometime later in September, Kenneth Daniels, the GBI forensic toxicologist who tested Smith's blood and urine, had preliminary test results showing the presence of cocaine and marijuana in Smith's urine, but no drugs or alcohol in her blood. Daniels later told Dr. J. Carl Bleichner, the county medical examiner who conducted the postmortem examination of Smith, about those test results.

---

[1] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

On or about October 16, 1998, four days before the start of Harridge's trial, Dr. Bleichner spoke with the assistant district attorney who prosecuted Harridge. According to an affidavit provided by Dr. Bleichner, he told this prosecutor that the GBI laboratory's preliminary tests showed the presence of cocaine and marijuana in Smith's urine, but his autopsy results were not complete because he was still waiting for the final laboratory report.[2]

On the morning the trial began, October 20, 1998, Harridge's attorney complained to the court that he had not yet gotten the test results of Smith's blood and even suggested that someone from the state call the GBI crime laboratory to inquire about those results. When the judge asked the prosecutor about the state's position on Smith's blood, she did not reveal the preliminary results showing nothing in Smith's blood but showing the presence of cocaine and marijuana in her urine and instead stated that it was not the state's duty to test Smith's blood and that she had not received a request from Harridge to conduct his own independent test on Smith's blood. Thereafter, the court offered to give Harridge an opportunity to conduct his own test of Smith's blood, but Harridge turned down the offer and elected to proceed with the trial.

Approximately two months later, on December 31, 1998, the GBI laboratory issued its final report confirming that Smith did in fact have cocaine and marijuana in her urine. The report further indicates that marijuana was detected in Smith's blood.

A defendant proves a *Brady* violation by showing that (1) the state possessed evidence favorable to the defense, (2) the accused did not possess the evidence and could not have obtained it through reasonable diligence, (3) the state suppressed the favorable evidence, and (4) a reasonable probability exists that disclosure of the evidence would have altered the outcome of the proceedings.[3] All four of these factors exist in the instant case.

Given Dr. Bleichner's unrefuted affidavit, we must conclude that prior to the trial the prosecutor knew that the crime laboratory's preliminary test results showed cocaine and marijuana in Smith's urine. Even absent that affidavit, we would be compelled to find that the prosecution team possessed those test results. For purposes of *Brady*, we decide whether someone is on the prosecution team on a case-by-case basis by reviewing the interaction, cooperation and dependence

---

[2] The prosecutor has not refuted Dr. Bleichner's affidavit. At Harridge's motion for a new trial, she told the court that she remembers speaking to Dr. Bleichner about his autopsy report not being completed, but she does not recall if he told her about the cocaine and marijuana in Smith's urine. She said: "I do not remember having that conversation. If I did[,] I don't remember."

[3] *Carroll v. State*, 222 Ga. App. 560, 561 (474 SE2d 737) (1996).

of the agents working on the case.[4] Here, the GBI laboratory was fully involved in the investigation of this case in that it was responsible for testing not only Smith's blood and urine, but also Harridge's blood. Moreover, both the medical examiner and the prosecutor were completely dependent on the crime lab for determining the amount of drugs and alcohol present in Smith's and Harridge's bodies. Because the GBI laboratory was part of the prosecution team and based on Dr. Bleichner's affidavit, we find that the state had possession of the test results showing drugs in Smith's urine.[5]

Contrary to the state's argument, the test results are material and favorable to Harridge. The state argues that the results are not favorable to the defense because the evidence at trial established the collision was caused only by Harridge's crossing the road's centerline. While there is evidence to support such a conclusion, that is a matter for the jury to decide after hearing all the material evidence, including the conduct and condition of Smith at the time of the accident. In a vehicular homicide case,

> the conduct of the decedent, whether negligent or not, is material to the extent that it bears upon the question of whether under all the circumstances of the case the defendant was negligent, or, if negligent, whether the decedent's negligence was the sole proximate cause of the injury, or whether the injury or death resulted from an unavoidable accident.[6]

The level of cocaine and marijuana in Smith's body is a circumstance on which Harridge could have relied to support his defense that he did not cause the accident. The jury may or may not have been persuaded by such a defense. But the jury, not the state, is entitled to make that decision based on all the evidence.

It is undisputed that Harridge did not have the preliminary test results of Smith's urine and that he could not have obtained them even through reasonable diligence. Daniels, the GBI forensic toxicologist, testified without contradiction at the motion for new trial hearing that the preliminary results would not have been available to the defense. Rather, he testified, such information is available only to the officer who submitted the evidence and to the prosecutor in the case.

Nevertheless, the state argues that Harridge cannot meet the

---

[4] *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994).

[5] See generally *Moody v. State*, 210 Ga. App. 431, 432 (1) (436 SE2d 545) (1993) (an existing scientific report in the possession of the state crime lab is deemed to be available to the district attorney for purposes of discovery under OCGA § 17-7-211 (b)).

[6] (Citations and punctuation omitted.) *Miller v. State*, 236 Ga. App. 825, 829 (2) (513 SE2d 27) (1999).

second prong of the *Brady* test because he waived the trial court's offer of a continuance in order to independently test Smith's blood. The state's argument misses the point. The question here is not whether Harridge with reasonable diligence could have had the blood and urine samples tested himself, but whether he could have, through reasonable diligence, *obtained the GBI crime lab's preliminary test* results showing cocaine and marijuana in Smith's urine. As the GBI toxicologist testified, Harridge could not have gotten those test results, which were available only to the prosecution. Thus, Harridge has met the second prong of the *Brady* test.

He also meets the third prong. Given Harridge's request for *Brady* material filed more than a month before the trial, the fact that the prosecutor never informed Harridge about the preliminary test results and that the prosecutor failed to inform either Harridge or the court on the morning of the trial about the drugs found in Smith's urine, we must conclude that the state suppressed the material evidence. The prosecutor had an obligation to reveal this evidence favorable to Harridge's defense, and her failure to do so, however inadvertent, amounts to suppression of the evidence.

Finally, we cannot say with any degree of certainty that the jury's verdict would not have been different if it had heard evidence that Smith may have been under the influence of cocaine and marijuana at the time of the accident. The evidence goes to the question whether Smith was impaired and could not avoid the accident because of her impairment: in short, whether her condition was a contributing cause of her death. Where the ultimate issues are whether Harridge failed to maintain his lane and whether such failure caused Smith's death, the jury should have heard the evidence improperly suppressed by the state. Because there is a reasonable probability that the disclosure of that information may have altered the outcome of the trial, Harridge is entitled to a new trial on the charges of vehicular homicide in the second degree and failing to maintain a lane.[7]

2. Harridge contends there is insufficient evidence that he possessed alcohol while under the age of 21. The contention is without merit.

The unrefuted evidence shows that Harridge was only 20 at the time of the accident, and he has made no claim to the contrary. Moreover, there was testimony from two sheriff's deputies that they saw beer and wine coolers in Harridge's truck at the accident scene. And two other witnesses testified that Harridge told them that he had consumed alcohol earlier during the day of the accident.

---

[7] See *Carroll*, supra.

Based on all the evidence, the jury was authorized to find beyond a reasonable doubt that Harridge possessed alcohol when he was under 21.[8] His conviction for that offense is therefore affirmed.

3. Harridge argues that, although the court correctly suppressed the introduction into evidence of beer and wine cooler bottles allegedly seized from his truck some time after the accident, the court erred in nevertheless allowing a deputy to testify that he had seen such bottles at the accident scene. We disagree.

The trial court granted Harridge's motion to suppress the bottles because the deputy seized them without a warrant after the truck had sat for nearly two days in an unsecured wrecker yard. But, the court ruled, the deputy could still testify about what he had seen in plain view at the scene of the accident, including his claim that he saw bottles of alcoholic beverages in Harridge's overturned truck.

A trial court's ruling that illegally seized evidence must be suppressed does not necessarily constitute a ruling on the admissibility of testimony related to that evidence.[9] Such testimony may, for reasons not appearing in the motion to suppress, be admissible.[10] This is such a case. While evidence seized without a warrant from the unprotected truck long after the accident may have been inadmissible, that improperly seized evidence did not render the deputy's plain view observations at the accident scene inadmissible.[11] We find no error in the court's ruling.

4. Harridge claims that the court erred in denying his motion for a directed verdict on the charges of driving under the influence of alcohol, vehicular homicide in the first degree and causing serious injury by vehicle. Any error in the court's failure to direct a verdict on those offenses is rendered moot because Harridge was found not guilty of those offenses.[12] And upon the retrial of this case he, of course, cannot be retried for those offenses.[13]

5. Harridge contends that the court erred in denying his demurrer to the indictment count charging him with failing to maintain a lane. The indictment cited the applicable Code section, OCGA § 40-6-48, which provides that whenever a road is divided into two or more lanes of traffic "a vehicle shall be driven as nearly as practicable

---

[8] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Lee v. State*, 224 Ga. App. 542 (1) (481 SE2d 264) (1997); OCGA § 3-3-23 (a) (2).

[9] *Reid v. State*, 129 Ga. App. 660, 663 (2) (c) (200 SE2d 456) (1973).

[10] Id.

[11] See generally *Johnson v. State*, 179 Ga. App. 21, 22 (345 SE2d 123) (1986) (police officers testified about what they saw at accident scene, including beer in defendant's car).

[12] See *Matthews v. State*, 268 Ga. 798, 803 (5) (493 SE2d 136) (1997); *Jones v. State*, 213 Ga. App. 11, 12 (1) (444 SE2d 89) (1994).

[13] See *Dinning v. State*, 267 Ga. 879, 880 (485 SE2d 464) (1997) (double jeopardy prohibits the retrial of a criminal defendant when the prosecution has failed to produce sufficient evidence to convict at the first trial).

entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."[14] After citing that Code section, the indictment states that Harridge "did fail to operate his motor vehicle entirely within a single lane of traffic. . . ." Harridge argues that this language is deficient because it does not allege that he failed to ascertain whether he could move from his lane safely. The argument is unpersuasive.

The true test of the sufficiency of an indictment is not whether it could have been more definite, but whether it contains the elements of the offense charged, sufficiently informs the defendant of the charges so that he can present his defense without being surprised by the evidence and protects him against another prosecution for the same offense.[15] Moreover, the absence of certain language in an indictment can be cured by citation to the applicable statute.[16]

In this case, the indictment sufficiently informed Harridge of the offense that he needed to defend against and fully protected him against any subsequent prosecution for the same offense. Moreover, the citation of the applicable Code section cured any deficiency in the indictment. The trial court therefore did not err in denying Harridge's demurrer.

6. We need not address Harridge's claim that he is entitled to a new trial because of newly discovered evidence, because he can present any admissible new evidence at his retrial.

For the reasons set forth in this opinion, we affirm Harridge's conviction for possession of alcohol by a minor, reverse his convictions on the charges of homicide by vehicle in the second degree and failure to maintain his lane and remand the case to the trial court with direction that Harridge be retried only on the charges of vehicular homicide in the second degree and failing to maintain a lane.

*Judgment affirmed in part and reversed in part and case remanded with direction. Phipps, J., and McMurray, Senior Appellate Judge, concur.*

DECIDED APRIL 18, 2000.

*Michael J. Moore, Arthur H. Clarke, Jr.,* for appellant.

---

[14] OCGA § 40-6-48 (1).

[15] *Wade v. State*, 223 Ga. App. 222, 223-224 (477 SE2d 328) (1996).

[16] Id.; *Broski v. State*, 196 Ga. App. 116, 117 (1) (395 SE2d 317) (1990).

*Kelly R. Burke, District Attorney, Amy E. Lambert, Assistant District Attorney,* for appellee.