S02A0497. ROSE v. THE STATE.
(563 SE2d 865)

THOMPSON, Justice.

Ricky Rose was convicted by a jury of malice murder, felony murder, feticide, aggravated assault, and burglary in connection with the

beating death of Tamyra Lilly and the death of her unborn child.[1] On appeal, Rose challenges several evidentiary rulings and asserts that the trial court improperly considered prior convictions to enhance sentencing. Finding no error, we affirm.

The nude body of Tamyra Lilly was discovered in a field adjacent to the housing project where she lived. She had been severely beaten about the head and face; her fingernails were broken, indicating that she attempted to fight off her attacker. The cause of death was blunt force trauma to the head in conjunction with manual strangulation. The victim was seven and one-half months pregnant, and her fetus died as a result of her injuries. Simultaneously, police learned that Lilly's apartment had been ransacked and burglarized.

Within days of the murder, appellant Rose was seen carrying Lilly's television set into an apartment he occupied with a friend. Police received a call from a woman who overheard Rose tell others that he raped and then killed Lilly after he gave her $40 and she ran from her apartment. He also confessed to another friend that he "killed the bitch [because] she owed me some money," and opined to another that "if the bitch did something [bad enough] she deserved" being murdered.

Rose was arrested for the crimes. He had scratches on his face and neck which were consistent with a struggle. During an interview with police, Rose admitted that he knew the victim and that he had been in her apartment. A warrant was obtained to collect a sample of Rose's blood, at which time he volunteered to the officer that the blood under the victim's nails would prove to be his.

1. The evidence was sufficient to enable a rational trier of fact to find Rose guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Rose submits that the trial court erred in admitting evidence of his conviction for rape in 1985.

In order for independent act evidence to be admitted at trial, the State must demonstrate that the evidence is being offered for an appropriate purpose and should not raise an improper inference of

---

[1] The crimes took place on August 13, 1996. An indictment was returned on September 9, 1997, charging Rose with malice murder, felony murder (four counts), feticide, aggravated assault, kidnapping, and burglary. Trial commenced on November 2, 1998, and on November 5, 1998, a jury found Rose guilty of malice murder, felony murder with the underlying felony of aggravated assault, feticide, aggravated assault, and burglary. On January 7, 1999, Rose was sentenced under OCGA § 17-10-7 (b) (2) to life without parole, plus a consecutive life sentence, and term of 20 years. A motion for new trial was filed on February 5, 1999, and amended on July 7, 2000. The motion for new trial was denied on February 28, 2001. A notice of appeal was timely filed on March 30, 2001. The case was docketed in this Court on December 17, 2001, and was submitted for decision on briefs on February 11, 2002.

the character of the accused; there must be sufficient evidence that the accused committed the independent act; and a sufficient similarity must be shown between the independent act and the crime charged such that the former tends to prove the latter. *Rittenhouse v. State*, 272 Ga. 78 (4) (526 SE2d 342) (2000), citing *Williams v. State*, 261 Ga. 640 (2) (409 SE2d 649) (1991).

At a hearing pursuant to USCR 31.3 (B), the prosecutor made the following proffer: The evidence would show that in 1984, police responded to a call concerning a "person screaming" in an area about five miles from the present murder. They arrived on the scene to find Rose in the act of sexual intercourse with a woman on a city sidewalk. The struggling victim had been beaten; her injuries included a lacerated lip and swollen mouth. Rose was positively identified as the perpetrator of the 1984 assault, and he pled guilty to rape in 1985. The State sought to admit this evidence to show course of conduct and identity.

At trial, the State offered testimony of police officer Hall who responded to the 1984 call and who observed the crime in progress; he essentially testified to the foregoing facts. A certified copy of the 1985 rape conviction was tendered into evidence. That evidence was sufficient to establish that Rose committed the prior crime and was admissible to illustrate course of conduct. *Rittenhouse*, supra at 80 (4).

3. Rose submits that the trial court erred in allowing police officer Hall to testify because his name did not appear on the State's list of witnesses provided to the defense pursuant to OCGA § 17-16-8 (a).

The State established that it intended to produce the victim of the 1984 rape to testify to the facts of that crime, but that she failed to answer a trial subpoena and was homeless and could not be located. In her place, the State proposed to call officer Hall who had responded to the police call and who observed the rape in progress. The State also alerted the defense to this eventuality during the pre-trial hearing to determine admissibility of the independent act testimony. In addition, the prosecutor demonstrated that officer Hall's name was contained in the police reports which were served on the defense a month prior to trial in conjunction with the State's notice of intent to present similar transaction evidence. Before ruling on an objection by the defense, the trial court required the State to voir dire the witness to determine the substance of his testimony, and the defense was permitted extensive cross-examination. Although the State offered to make the witness available for an interview, the defense did not ask for a continuance for that purpose. The trial court allowed the officer to testify only to those matters contained in the police report.

"The witness list rule is designed to prevent a defendant from being surprised at trial by a witness that the defendant has not had an opportunity to interview." *Mize v. State*, 269 Ga. 646, 653 (7) (501 SE2d 219) (1998). The trial court may allow an exception to the rule where good cause is shown and counsel is afforded an opportunity to interview the witness. OCGA § 17-16-8 (a). Here, the State established good cause for its failure to include officer Hall's name on its witness list, and the defense was not surprised because the identity and involvement of the unlisted witness were made known in discovery. In addition, the defense failed to accept the offer to interview the witness. Accordingly, there was no error in permitting the unlisted witness to testify to those facts contained in the report. *Mize*, supra; *McLarty v. State*, 238 Ga. App. 27 (2) (516 SE2d 818) (1999).

4. Prior to trial, the court granted a motion to suppress items seized from the apartment occupied by appellant and Tina Davis on the basis that the magistrate lacked sufficient probable cause to issue the warrant. At trial, Davis was permitted to testify that after Lilly's death, Rose brought a television, car speakers and other items into the apartment, and that he told her he took the items from a woman who owed him some money. Rose contends that the trial court erred in admitting the testimony and in denying his subsequent motion for mistrial because the items were among those suppressed as the product of an illegal search.

"A trial court's ruling that illegally seized evidence must be suppressed does not necessarily constitute a ruling on the admissibility of testimony related to that evidence. [Cit.] Such testimony may, for reasons not appearing in the motion to suppress, be admissible." *Harridge v. State*, 243 Ga. App. 658, 663 (3) (534 SE2d 113) (2000). In *Harridge*, a deputy was permitted to testify that he observed beer and wine bottles in defendant's vehicle on the night in question, despite suppression of that evidence. Here the lay witness testified to her personal observations; this knowledge is not derivative evidence of an illegal search. Id. Further, the testimony was merely cumulative of earlier testimony which was admitted without objection, i.e., that Rose was seen moving the victim's television into his apartment on the day after the murder.

5. Rose submits that the trial court erred in considering his 1985 guilty plea and conviction for rape to enhance sentencing in this case because the State failed to meet its burden of showing that he was competent at the time he entered the plea.[2]

At the sentencing hearing, it was established that Rose pled

---

[2] Rose was sentenced to life without parole based on evidence of three prior convictions introduced at the sentencing hearing. Those included, felony theft by taking, robbery, and the "serious violent felony" of rape. See OCGA §§ 17-10-6.1 (a) (4); 17-10-7 (b) (2).

guilty to rape in 1985, one month after a special plea of mental incompetence to stand trial had been entered. The State met its initial burden of proving the existence of the guilty plea and that Rose was represented by counsel. *Nash v. State*, 271 Ga. 281, 285 (519 SE2d 893) (1999). Once the presumption of regularity was shown, the burden shifted to the defendant to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. Id. Rose satisfied this burden of production with a copy of the order establishing his legal incompetency to stand trial, dated one month prior to the entry of his guilty plea. The burden then shifted to the State to prove the constitutionality of the plea. Id. The State offered extensive testimony from Judge John Langford who accepted the 1985 plea. Judge Langford testified that before accepting the plea, he "went into great detail to be satisfied that . . . there was medical certification from some psychiatric authority that Mr. Rose was now competent to stand trial," and that he followed his customary, thorough procedure in ensuring that Rose's plea was knowingly and voluntarily entered. The State carried its burden of showing that Rose was competent to enter the plea to rape and that the procedure used was constitutionally sound. *Nash*, supra. See generally *Newman v. State*, 258 Ga. 428 (1) (369 SE2d 902) (1988) (administrative release to court to face criminal charges raises presumption of competency). Compare *Martin v. State*, 147 Ga. App. 173 (2) (248 SE2d 235) (1978) (guilty plea set aside because it was entered while a special plea of incompetence was still pending). Since the State proved that Rose was previously convicted of the serious violent felony of rape, see OCGA § 17-10-6.1 (a) (4), he was properly sentenced to life without parole pursuant to OCGA § 17-10-7 (b) (2).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 28, 2002.

*Sarina J. Woods*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Bettieanne C. Hart, Elizabeth A. Baker*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Jill M. Zubler*, Assistant Attorney General, for appellee.