## A03A2232. JONES v. THE STATE.
### (592 SE2d 888)

PHIPPS, Judge.

April Jones was charged with the murder of Albert Ragland. She appeals her conviction of involuntary manslaughter. She challenges the sufficiency of the evidence to support the verdict and the correctness of various evidentiary rulings by the trial court. Finding the evidence sufficient and no reversible error, we affirm.

Jones and Ragland lived in the same neighborhood. State's witnesses Willie Malone, Serena Sims, Cortez Robinson, and Rodriguez King also lived in the neighborhood. On August 19, 2000, a neighborhood get-together took place at King's and Sims's houses. Jones and Ragland were present. State's witnesses testified that because

---

Ragland had been verbally harassing Jones, she walked up behind him while he was sitting down drinking beer and struck him on the head with a baseball bat. As a result, he was taken by ambulance to a hospital, where he died several days later. In sharp contrast to the testimony of the state's witnesses, Jones testified that she hit Ragland with the bat because he was trying to attack her and that she was facing him at the time.

1. In challenging the sufficiency of the evidence, Jones asserts that her testimony was more credible than that of the state's witnesses because of evidence that they were drinking and using drugs and that she was not. She points to various inconsistencies in the testimony of the state's witnesses. And she claims that the findings of the medical examiner who performed an autopsy on Ragland supported her defense and contradicted the testimony of the state's witnesses.

The medical examiner testified that Ragland was struck on the right side of the head and that his findings were consistent with Ragland's assailant having been either in front of him (as testified to by Jones) or behind him (as testified to by the state's witnesses). Although Malone and King testified that Ragland was hit on the top or on the back of his head, Sims and Robinson gave testimony to the effect that Jones hit Ragland toward the back of his head on the right. Malone and Sims also testified that before Jones hit Ragland with the bat, Robinson took the bat away from her and threw it down. Robinson testified that he tried to take the bat away from Jones but was unable to do so. Robinson testified that he never saw Ragland make physical contact with Jones. Sims testified that she saw Ragland hit Jones's leg with the back of his hand.

Resolving evidentiary conflicts and inconsistencies and assessing witness credibility are the province of the factfinder, not of the appellate court.[1] The question we must decide is whether the evidence, viewed in a light most favorable to the verdict, was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Jones committed involuntary manslaughter by causing Ragland's death, without any intention to do so, by the commission of the unlawful act of simple battery.[2] Clearly, it was.

2. Jones contends that the trial court erred in limiting defense counsel's recross-examination of Malone and cross-examination of Robinson.

(a) On recross-examination, defense counsel asked Malone whether, while he was waiting to testify in the hallway, he had com-

---

[1] *Hampton v. State*, 272 Ga. 284, 285 (1) (527 SE2d 872) (2000).
[2] *Dean v. State*, 273 Ga. 806-807 (1) (546 SE2d 499) (2001).

plained to Robinson and King that he was supposed to be paid $25 to testify but was being paid only $10. After Malone responded that Robinson had said that, the prosecuting attorney objected. The court sustained the objection on the ground that on recross-examination defense counsel could not inquire into matters that were not raised on redirect. "The trial court has discretion to limit the scope of recross-examination, which is not intended for the introduction of new matter. [Cit.] The trial court did not abuse its discretion by prohibiting the question as beyond the scope of redirect. [Cit.]"[3]

(b) During defense counsel's cross-examination of Robinson, he asked whether Robinson had complained about getting $10, rather than $25, for coming to court. Robinson admitted making the statement. Defense counsel then asked whether Robinson had been paid $10 to come to court and testify. Robinson responded that he had been paid a $10 witness fee. The prosecuting attorney then made an objection at an unreported bench conference. The court apparently sustained the objection, as it proceeded to instruct the jury to disregard the testimony concerning the witness fee. Jones contends that the trial court erred in sustaining the prosecuting attorney's objection. We are unable to review Jones's contention, because the transcript does not show what objection was made. "Absent a complete transcript, this court can only presume the trial was conducted in a regular and proper manner. [Cit.]"[4]

3. Jones contends that the trial court erred by denying her request to introduce prior violent acts of the victim through admission of a certified copy of a conviction against Ragland for simple assault, accompanied by testimony of the officer investigating the incident.

In *Chandler v. State*,[5] the Supreme Court of Georgia held that evidence of specific acts of violence by a homicide victim against third persons shall be admissible where the defendant claims justification.[6] In *Stephens v. State*,[7] the Court held that, where the state is seeking to admit evidence of similar transactions, a certified copy of a criminal conviction, standing alone, is insufficient for the state to establish the required similarity between an independent offense

---

[3] *Scott v. State*, 227 Ga. App. 900, 902-903 (4) (d) (490 SE2d 208) (1997).

[4] *Bogan v. State*, 206 Ga. App. 696, 701 (6) (426 SE2d 392) (1992).

[5] 261 Ga. 402, 407 (3) (b) (405 SE2d 669) (1991).

[6] Finding guidance in Uniform Superior Court Rule 31.1 (which requires the prosecuting attorney to give advance notice of the state's intention to use evidence of similar transactions or occurrences), the Court in *Chandler* further held that a defendant seeking to introduce evidence of specific acts of violence by the victim against third persons should also provide pretrial notice of his intent to introduce such evidence.

[7] 261 Ga. 467, 468-469 (6) (405 SE2d 483) (1991).

and the crime charged. In *Rose v. State*,[8] the Court approved the state's proof of a similar crime through a certified copy of the conviction accompanied by the testimony of the investigating officer.[9]

In this case, the trial court refused to allow Jones to introduce a certified copy of Ragland's conviction for simple assault, even though the testimony of the investigating officer was also proffered. The court did, however, allow the defense to present testimony from five witnesses concerning other incidents. Those witnesses testified that Ragland had a reputation for violence; that he had used an iron pipe in a fight with Malone; that he had hit his mother in the eye with his fist; that, for trivial reasons, he had stabbed an unarmed man multiple times and beaten a man with a bat; and that he had beaten up a man he saw walking down the street because the man was homosexual. If the defense had been allowed to introduce evidence of Ragland's simple assault conviction, it would have shown that he had beaten up Jones's mother's boyfriend. In light of the other evidence concerning Ragland's violent character, we find no harmful error in its refusal to admit evidence of the one additional incident.

4. Jones contends that the trial court erred in preventing defense counsel from posing a series of questions to defense witness Gwendolyn Jones, the defendant's grandmother.

Over a hearsay objection by the state, the trial court allowed the witness to testify that she had overheard Sims accusing another state's witness of lying on the stand. Defense counsel then asked the witness whether she had ever heard Sims say that none of this would have happened if Ragland had not been messing with the defendant. The state thereupon raised an objection, the grounds of which were discussed at an unreported bench conference. Jones contends that the trial court erred in sustaining the objection. Again, the absence of a complete transcript precludes our review of the issue.[10]

5. Jones contends that the court erred in sustaining the state's objection to defense counsel's attempt to impeach various state's witnesses through a defense witness's testimony about their conduct while sitting in the hallway waiting to testify.

Defense counsel asked defense witness Johnnie Jones, the defendant's mother, how some of the prosecution witnesses were acting in the hallway. When the prosecutor objected, defense counsel

---

[8] 275 Ga. 214, 215-216 (2) (563 SE2d 865) (2002).

[9] See also *Dixon v. State*, 275 Ga. 232, 233 (3) (564 SE2d 198) (2002) (statements by victim and by witnesses to investigating officers held admissible under necessity or res gestae exceptions to hearsay rule); compare *Brown v. State*, 274 Ga. 31, 32-36 (1) (549 SE2d 107) (2001) (narrative portion of police report held inadmissible under business records exception to hearsay rule when read by police officer who had no personal knowledge of report and did not prepare it).

[10] *Bogan v. State*, supra.

said that he was seeking to elicit testimony about an inconsistent statement by a prosecution witness. The trial court ruled that the defense could prove the inconsistent statement but that the witnesses' conduct in the hallway was not relevant. Outside the presence of the jury, defense counsel then stated that he was seeking to show that the prosecution witnesses were laughing and joking in the hallway and generally making light of the entire proceeding. Defense counsel argued that if the jury could take into consideration the demeanor of a witness on the witness stand, the jury should be able to consider the witness's demeanor off the stand. The court disagreed, finding the defense witness's testimony concerning the prosecution witnesses' out-of-court conduct insufficiently probative to warrant its admission in evidence. Consequently, the court sustained the prosecuting attorney's objection. Determinations of the relevancy of evidence rest within the sound discretion of the trial court.[11] We find no abuse.

6. Finally, Jones contends that the trial court erred in admitting post-autopsy photographs of Ragland's brain.

"A photograph which depicts the victim after autopsy incisions are made or after the state of the body is changed by authorities or the pathologist will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy."[12] In this case, the medical examiner testified that Ragland's death resulted from fractures to the right side of the skull causing epidural and subdural bleeding and from contusions to the brain on the right frontal and parietal regions and on the left temporal region. According to the medical examiner, blows to the right side of the head caused the brain to move, thereby resulting in the contusions on the left side of the brain. Because the injuries to the left side of the brain contributed to Ragland's death and only became apparent because of the autopsy, "the photographs were admissible to aid the medical examiner in describing the cause and manner of death, and the court did not abuse its discretion in admitting the photographs. [Cits.]"[13]

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JANUARY 8, 2004.

*Maria Murcier-Ashley*, for appellant.

---

[11] *Johnson v. Riverdale Anesthesia Assoc.*, 275 Ga. 240, 243 (3) (563 SE2d 431) (2002).
[12] *Brown v. State*, 250 Ga. 862, 867 (5) (302 SE2d 347) (1983).
[13] *Peterson v. State*, 274 Ga. 165, 171 (5) (549 SE2d 387) (2001).

*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney,* for appellee.