**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 3, 2015**

# In the Court of Appeals of Georgia

A15A0212. ARBEGAST v. THE STATE.

McFADDEN, Judge.

After a jury trial, Steven Jesse Arbegast was convicted of two counts of child molestation. He appeals, arguing that the trial court erred in admitting similar transaction evidence, but we find that he has not shown that the trial court abused his discretion in admitting the evidence. Arbegast argues that the trial court erred by failing to give an additional instruction to the jury on the limited purpose of such evidence, but he did not ask for an additional instruction. Arbegast argues that the trial court erred by denying his request for a continuance due to the state's failure to disclose the contact information for one of the similar transaction victims, but he was given the remedy to which he was entitled, the opportunity to interview the witness before she testified. Arbegast argues that the trial court erred by denying his motion

for funds to hire an expert witness, but he did not make the required showing. Arbegast argues that the introduction of child hearsay violated his constitutional confrontation rights, but he did not object on this ground at trial and he chose not to have the declarants testify. Arbegast raises eight claims of ineffective assistance of counsel, but he has not shown both deficient performance by trial counsel and actual prejudice. We therefore affirm Arbegast's convictions.

1. *Facts.*

On appeal from a criminal conviction,

the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Morris v. State*, 322 Ga. App. 682 (1) (746 SE2d 162) (2013) (citation omitted).

Viewed in this light, the evidence shows that Arbegast was convicted of molesting two victims, K. Q., who was ten years old, and her sister, K. B., who was nine years old. Arbegast was formerly married to their stepfather's sister. In August 2003, Arbegast called the victims' mother to ask if the victims and their younger

sister could go to a movie with him and his seven-year-old son. Arbegast's car was too small to fit them all and the mother was ill and could not drive them, so the victims' grandmother dropped them off and their mother's friend agreed to pick them up.

The mother accompanied her friend to pick up the girls, who were waiting outside the mall with Arbegast and his son. When she got in the car, K. Q. began crying. Her mother asked her what was wrong and she blurted out, "Uncle Steve touched me." K. B. said that he had touched her, too. They arrived home, and the mother told her husband. They separated the girls and called the police. At the police station, a detective spoke with K. Q. and K. B. separately and the interviews were recorded. The video recording was played for the jury.

The recording shows that K. Q. told the detective that while they were at the movies, Arbegast "touched [her] in areas [she didn't] like." He first hugged her, then touched her "in the middle and the top" under her pants with his hand. She tried to slide away from him on her movie seat, but he pulled her back and then put his hand under her shirt, touching her chest. After the movie, Arbegast took the children to a video arcade, where he asked K. Q., "Are we cool?" As they were leaving the mall, Arbegast said, "Don't tell anybody."

3

K. B. told the detective that Arbegast put his finger in her "pee pee." She explained that she had been sitting on his leg, bouncing, when "he took his hand and put it in [her],' under her panties.

We conclude that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Arbegast was guilty of the crimes of which he was convicted. *Jackson*, supra, 443 U. S. at 319 (III) (B).

2. *Similar transaction evidence*.

(a) *Admissibility*.

Arbegast argues that the trial court erred in admitting two similar transactions. He argues that both were too remote in time from the instant crimes to be admissible; that his young age at the time of the first similar transaction rendered it inadmissible; and that the evidence was insufficient to prove that he committed the second similar transaction. ("Because this case was tried prior to January 1, 2013, Georgia's old Evidence Code applies here." *Bragg v. State*, 295 Ga. 676, 677 n. 3 (763 SE2d 476) (2014).) Arbegast has not shown that the trial court abused his discretion in admitting the similar transaction evidence.

At trial, the mother of the victim of the first similar transaction testified that in 1988, when her son was five years old,  his father noticed sores on the boy's penis.

4

A pediatrician diagnosed the boy with herpes and referred him to a specialist at a local hospital, who determined the he had been sexually assaulted. The state played a video recording of the victim, made in October 1991 when the victim was eight years old, describing the sodomy and identifying Arbegast as the perpetrator. He testified that "Steve" told him not to tell anyone. The mother testified at Arbegast's trial that she decided not to press charges because her son was terrified of Arbegast, who would have had the right to confront the boy at trial.

The victim of the second similar transaction testified that in 1992, when she was 17 years old, she worked as a cashier at a grocery store. On June 5, 1992, when their shifts ended, she and a co-worker, another 17-year-old girl, went to the friend's house to watch a movie. Arbegast, who supervised the girls at work and was 21 years old, showed up uninvited. At one point, the victim went to the bathroom and closed, but did not lock, the door. As she was pulling up her shorts, Arbegast walked into the bathroom and locked the door. He pushed the victim against the wall, put his hand over her mouth, fondled her breasts, and inserted his finger into her vagina. The friend began knocking on the door, and Arbegast ran from the bathroom and left the house. The victim called her mother, and her mother or her friend called the police, to whom the victim gave a statement.

5

The trial court held that the similar transactions were admissible to show Arbegast's course of conduct and bent of mind.[1]

(i) *Remoteness*.

Arbegast argues that the similar transactions were too remote in time from the instant crimes to be admitted. The instant crimes occurred in August 2003. The first similar transaction occurred no later than 1988, a lapse of 15 years, and the second similar transaction occurred in 1992, a lapse of 11 years.

Before admitting similar transaction evidence,

> the trial court must determine that the [s]tate has affirmatively shown that: (1) the [s]tate seeks to admit evidence of the independent offenses or acts for an appropriate purpose; (2) there is sufficient evidence that the accused committed the independent offenses or acts; and (3) there is sufficient connection or similarity between the independent offenses or acts and the crimes charged so that proof of the former tends to prove the latter.

---

[1] As noted, the old Evidence Code applies here. We observe that, in general, the new Evidence Code eliminates bent of mind and course of conduct as permissible purposes for the admission of similar transaction evidence. *Algren v. State*, 330 Ga. App. 1, 4 (1) n. 13 (764 SE2d 611) (2014). But "in criminal proceedings in which the defendant is accused of a sexual assault[ or child molestation], the new Code includes [] provision[s] for the admission of certain prior sexual assaults or child-molestation offenses for bearing on any matters to which they are relevant. See OCGA §§ 24-4-413; 24-4-414." Id.

6

*Pareja v. State*, 286 Ga. 117, 119 (686 SE2d 232) (2009) (citations omitted). We review the trial court's decision to admit similar transaction evidence for an abuse of discretion. Id. at 121.

Generally, the lapse of time between a similar transaction and the crime being tried goes to the weight and credibility of the evidence, not to its admissibility. Id. at 119. But, as Arbegast correctly asserts, when similar transactions that did not result in convictions "are *particularly remote* because they were committed *decades in the past*," id. (emphasis supplied), the trial court also must consider whether "the prejudice to the defendant caused by defending against alleged crimes occurring in the *far distant past* outweigh[s] any probative value the alleged crimes may have in a prosecution for a current crime." Id. at 121 (emphasis supplied). However, "[p]articularly in the area of sexual offenses, the admissibility of similar transaction evidence is liberally construed." *Lakes v. State*, 314 Ga. App. 10, 12 (1) (722 SE2d 859) (2012) (citation and punctuation omitted). This is so "because such evidence tends to establish that a defendant has such bent of mind as to initiate or continue a sexual encounter without a person's consent." *Pareja*, 286 Ga. at 121 (citation omitted). And "we must be mindful that [the] decision [to admit similar transaction evidence] should be upheld unless it is an abuse of discretion*."* Id. (citation omitted).

7

Assuming without deciding that 11-year-old and 15-year-old similar transactions are "particularly remote" so as to require attention to additional considerations for admissibility, rather than weight and credibility, we find that the trial court did not abuse his discretion in admitting the evidence. Both similar transactions and the instant crimes involved Arbegast committing sexual acts against children. In the first similar transaction and the instant crimes, Arbegast's victims were young children. In the second similar transaction and the instant crimes, Arbegast, who was in a position of authority over the victims, reached his hand under the victims' clothing and touched their breasts and vaginas. "Under [the] guiding principles[ and] considerations discussed above, we find that, based on the record in this case, the trial court did not abuse [his] discretion in [his] determination that the allegation[s] of child abuse that occurred [11 and 15] years in the past, due to [their] similarity to the present crime and [their] probative value to show [Arbegast's] unique bent of mind, [were] admissible as similar transaction evidence." Id. (trial court did not abuse discretion in admitting evidence of 26-year-old child molestation allegation). See also *Roberson v. State*, 327 Ga. App. 804, 807-808 (2) (761 SE2d 361) (2014) (acts that occurred more than 20 years before were admissible in prosecution for child molestation and sexual battery); *Pendley v. State*, 308 Ga. App.

8

821, 824 (2) (709 SE2d 18) (2011) (similar act of child molestation 30 years in past admissible).

(ii) *Arbegast's age at the time of the first similar transaction*.

Arbegast argues that the trial court abused his discretion in admitting evidence of the first similar transaction because he was only 16 years old at the time it occurred. We disagree.

A trial court should consider a defendant's youth at the time of a similar transaction when deciding whether to admit such evidence. *Dean v. State*, 321 Ga. App. 731, 734 (1) (b) (742 SE2d 758) (2013). But Arbegast was 16 years old at the time; he "would have been old enough to be held criminally responsible for his conduct in this [s]tate. See OCGA § 16-3-1 (age 13)." Id. at 735 (1) (b) (other citations omitted). See also *Ledford v. State*, 313 Ga. App. 389, 390-391 (1) (721 SE2d 585) (2011) (upholding admission of evidence of similar transaction committed when defendant was 11 or 12 years old).

(iii) *Sufficiency of the evidence that Arbegast committed the second similar transaction.*

Arbegast argues that the evidence was insufficient to prove that he committed the second similar transaction. We disagree because

9

[a]bsolute proof is not required that a defendant committed the offense in a similar transaction. Instead, the [s]tate is required to prove that [Arbegast] committed the prior act by a preponderance of the evidence. A conviction for the prior act is not required, and it may be proven by circumstantial evidence. In this case, the [s]tate met its burden by presenting [the testimony of the victim].

*Dean,* 321 Ga. App. at 733-734 (1) (a) (742 SE2d 758) (2013). See also *Roberson,* supra, 327 Ga. App. at 807 (2) (similar transaction victims' testimony alone was sufficient to prove that defendant committed the similar transactions).

(b) *Jury instructions.*

Arbegast argues that the trial court erred by failing to instruct the jury about the limited purpose of the second similar transaction. We disagree because Arbegast did not request such an instruction.

At the state's request, the trial court instructed the jury about the limited purpose of the similar transaction evidence before the state presented evidence of the first similar transaction. (Arbegast did not request a limiting instruction before the admission of either similar transaction.) The trial court again instructed the jury about the limited purpose of similar transaction evidence in the final jury instructions.

Arbegast did not request such an instruction before the state presented evidence of the second similar transaction, and

> [i]n the absence of a request, a trial judge is not required to give a contemporaneous limiting instruction regarding similar transaction evidence. Regardless of when the defendant wishes the jury instructed on the limited admissibility of similar transaction evidence, it is incumbent upon him to make a timely request for such a charge. Here, although there is no indication in the transcript that [Arbegast] requested any limiting instruction whatsoever, the trial court gave a limiting instruction before the first similar transaction witness testified. And, the trial court reiterated the limited application of the similar transaction evidence in its final charge to the jury. If [Arbegast] wanted the trial court to instruct the jury on the proper use of the evidence [an] additional time[], it was his duty to make that request. The trial court did not err in failing to give, sua sponte, limiting instructions contemporaneously with each witness' testimony.

*Hardeman v. State*, 247 Ga. App. 503, 507 (4) (b) (544 SE2d 481) (2001) (citations omitted).

3. *State's failure to disclose similar transaction victim's contact information.*

Arbegast argues that the trial court erred by denying his request for a continuance when the court determined that the second similar transaction was admissible. He argues that the state violated OCGA § 17-16-8 (a) by failing to

11

disclose the victim's contact information. That statute requires the state, not later than ten days before trial, to

> furnish to the opposing counsel as an officer of the court, in confidence, the names, current locations, dates of birth, and telephone numbers of that party's witnesses, unless for good cause the judge allows an exception to this requirement, in which event the counsel shall be afforded an opportunity to interview such witnesses prior to the witnesses being called to testify.

The record discloses that, months before trial, the state filed notice of its intent to introduce this similar transaction, listing the prior offense's case number, date of offense, county of offense, disposition, and victim's name. Days before trial, the state moved to withhold any other identifying information to protect the victim's anonymity pursuant to her request. The state disclosed that it had checked the victim's criminal history and had determined that the victim had never been arrested for or convicted of any crime. At the beginning of the trial, the court granted the state's motion but directed the state to make the victim available to defense counsel before she testified. The state gave defense counsel a printout showing that the victim had no criminal record. Defense counsel met with the victim prior to her testimony, but she refused to talk to him.

12

Arbegast argues that this violated the statute and the trial court should have granted him a continuance as a result. We disagree because the purpose of the statute was satisfied. That purpose is

> to prevent a defendant from being surprised at trial by a witness that the defendant has not had an opportunity to interview. The trial court may allow an exception to the rule where good cause is shown and counsel is afforded an opportunity to interview the witness. Here, . . . the defense was not surprised because the identity and involvement of the [victim was] made known in discovery.

*Rose v. State*, 275 Ga. 214, 217 (3) (563 SE2d 865) (2002) (citations and punctuation omitted). And Arbegast has not shown that the trial court abused his discretion in determining that the state had shown good cause to withhold the victim's contact information.

Even had the court abused his discretion in finding good cause, Arbegast received the remedy to which he was entitled. "[A]bsent a showing of prejudice *and* bad faith, an interview of the witness is the remedy for failure to comply with the requirement that a witness must be identified prior to trial." *Carter v. State*, 253 Ga. App. 795, 797 (1) (560 SE2d 697) (2002) (citation and punctuation omitted; emphasis

in original). Here, Arbegast has not shown prejudice or bad faith, and he was given the opportunity to interview the witness.

4. *Denial of motion for funds to hire an expert witness.*

Arbegast argues that the trial court erred by denying his motion for funds to hire an expert witness to testify about techniques in interviewing children. But he did not make the required showing in the trial court of "why the expert's services are required, what services are to be performed by such expert, the identity of the expert, and the cost to provide the needed services," *Coalson v. State*, 251 Ga. App. 761, 766 (3) (555 SE2d 128) (2001), a fact he concedes in his appellate brief. Consequently, Arbegast has not shown that the trial court abused his discretion. Id. at 767 (trial court did not abuse discretion in denying motion for funds where defendant stated the name of the proposed expert, his hourly rate and maximum fee, and that the expert was needed to determine whether proper interviewing techniques were performed, given the state's intent to rely on child hearsay, but did not explain what evidence the expert would review or how he would review it, why such evidence was required by the defendant, and how his trial would be rendered fundamentally unfair without the expert's testimony).

5. *Child hearsay.*

Arbegast argues that the introduction of the out-of-court statements of K. Q., K. B., and the victim of the first similar transaction pursuant to the applicable child hearsay statute violated his Sixth Amendment right to confront witnesses against him. (As Arbegast was tried before January 1, 2013, the former child hearsay statute, former OCGA § 24-3-16, applies to his case. *State v. Dague*, 325 Ga. App. 202, 205 (2) n. 6 (750 SE2d 476) (2013).) We conclude that Arbegast waived this issue.

Arbegast did not object to the admission of the child hearsay on any ground (a failure he now claims is an instance of ineffective assistance of trial counsel). And at trial, he affirmatively declined the opportunity to question the victims before the jury. Counsel explained at the motion for new trial hearing that it was a matter of trial strategy; he did not want to confront K. B. or K. C. because he did not know what they would say. Had he called them – or caused the trial court to call them – he "would have been rolling the dice on what came out." As for the victim of the first similar transaction, he explained that he did not know what would have been accomplished by having him testify, given that, at the time of trial he no longer remembered anything, a fact that was presented to the jury. "Not only did [Arbegast] fail to object on Sixth Amendment grounds at trial, but he affirmatively declined the opportunity to question the victim[s] before the jury, thereby waiving his right to

15

confront [them]." *Walker v. State*, 322 Ga. App. 158, 161 (1) (744 SE2d 349) (2013) (citations and punctuation omitted).

6. *Ineffective assistance of counsel.*

Arbegast raises eight claims of ineffective assistance of counsel. To prevail on these claims, Arbegast is required to show both deficient performance by trial counsel and actual prejudice. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). If Arbegast "fails to meet his burden of proving either prong, then we do not need to examine the other prong." *Works v. State*, 301 Ga. App. 108, 114 (7) (686 SE2d 863) (2009) (citation omitted).

(a) *Failure to raise a confrontation clause objection to child hearsay.*

Arbegast argues that trial counsel was ineffective for failing to object to the admission of child hearsay as violative of his Sixth Amendment right to confront the witnesses against him. This claim fails because Arbegast cannot show prejudice. As Arbegast concedes, the three witnesses whose testimony was admitted through hearsay – K. Q., K. B., and the victim of the first similar transaction – were all at the courthouse. Had Arbegast objected, the state simply could have called the witnesses to testify. See *Hatley v. State*, 290 Ga. 480, 484 (I) (722 SE2d 67) (2012) (if

16

defendant objects to admission of child hearsay as violative of his confrontation rights, the state can still introduce the hearsay, as long as it presents child witness at trial).

(b) *Failure to object to the child hearsay on the ground that it was not reliable.*

Arbegast argues that trial counsel was ineffective for failing to object to the child hearsay on the ground that it was not reliable. At the motion for new trial hearing, trial counsel testified that he did not object to the reliability of the hearsay testimony of K. Q. and K. B. because he was convinced that the trial court would have denied the objection, since K. Q. and K. B. made their statements immediately upon exiting the movie theater. And, he testified, he was convinced that the trial court would have been correct in his ruling.

As for the reliability of the hearsay testimony of the first similar transaction victim, Arbegast failed to question trial counsel at the hearing on his motion for new trial

> about his decision-making with regard to this issue. In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Where trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome this presumption.

17

*Higginbotham v. State*, 287 Ga. 187, 190-191 (5) (a) (695 SE2d 210) (2010) (citation and punctuation omitted). "Because appellant failed to question trial counsel about this issue at the hearing on his motion for new trial, any decision not to object is presumed to be a strategic one that does not amount to ineffective assistance." *John v. State*, 282 Ga. 792, 796 (7) (c) (653 SE2d 435) (2007) (citation omitted). Strategic decisions are "insufficient to support an ineffective assistance of counsel claim. The decision not to object to certain hearsay . . . is often the result of reasonable trial strategy. Because [Arbegast] has not made a contrary showing, he has failed to show deficient performance." *Mitchell v. State*, 290 Ga. 490, 492 (4) (a) (722 SE2d 705) (2012) (citations and punctuation omitted).

In any event, as to all three hearsay declarants, "it was a reasonable trial strategy not to object [to the hearsay] because if the objection had been sustained, the [s]tate could have called the declarants to testify." *Hartsfield v. State*, 294 Ga. 883, 889 (3) (b) (757 SE2d 90) (2014) (citations omitted).

(c) *Failure to object to testimony about similar transaction victim's medical diagnoses*.

Arbegast argues that trial counsel was ineffective for failing to timely object to testimony of the mother of the first similar transaction victim that a doctor believed

18

his anus had been penetrated and that another doctor diagnosed him with herpes. Counsel did object the next day, after the mother had completed her testimony.

The testimony regarding anal penetration was cumulative of the victim's own description on the video recording of the acts Arbegast perpetrated on him. Therefore, "there is no reasonable probability that the failure of [Arbegast's] lawyer to object to [this] testimony affected the outcome of the trial." *Miller v. State*, 296 Ga. 9, 13 (4) (b) (764 SE2d 823) (2014) (citations omitted).

As for the herpes testimony, before realizing that he, in fact, had objected the next day, trial counsel testified at the motion for new trial hearing that he failed to object because Arbegast wanted the jury to know that the child had herpes. Counsel explained that "part of [their] strategy [was that the state] could not prove that [Arbegast] ever had genital herpes, and so that child got it from somebody other than [Arbegast], and that's why [counsel] did not object." In furtherance of this strategy, Arbegast testified at trial that he did not have herpes, defense counsel called Arbegast's father as a witness, and he testified that he never had Arbegast treated for herpes, and defense counsel argued in closing that Arbegast did not have herpes, implying that the similar transaction victim must have contracted it from someone else.

19

Although he may have changed his mind later, trial counsel's strategic decision not to object to the herpes testimony was reasonable because it supported Arbegast's claim that he could not have molested the boy. "The problem with [Arbegast's] argument [that the failure to object to the herpes testimony was deficient,] is that it depends entirely on hindsight. To show deficient performance, a defendant must demonstrate that counsel's performance was not reasonable under the circumstances confronting counsel at the time, without resorting to hindsight." *Belton v. State*, 270 Ga. 671, 673 (3) (512 SE2d 614) (1999) (citation and punctuation omitted). This Arbegast has failed to do.

(d) *Failure to present results of Arbegast's medical test.*

Arbegast argues that trial counsel was ineffective for failing to introduce the results of his test for herpes. Trial counsel testified that he did not introduce the test results because they were inconclusive. He testified that he did argue in closing that if Arbegast had herpes, the state would have introduced evidence of it. And, as noted above, both Arbegast and his father testified that Arbegast did not have herpes. "Therefore, as there was already some evidence [that Arbegast did not have herpes] before the jury, it cannot be said that there is a reasonable probability that the trial result would have been different if [the inconclusive test results] had been . . . entered

20

into evidence." *Scandrett v. State*, 293 Ga. 602, 605 (4) (748 SE2d 861) (2013) (citation omitted).

(e) *Failure to file a speedy trial demand earlier.*

Arbegast argues that trial counsel was ineffective for failing to file a speedy trial demand earlier in the proceeding. Trial counsel, who began his representation of Arbegast on March 22, 2006 after Arbegast's first attorney became ill, did file a motion claiming a violation of Arbegast's constitutional right to a speedy trial on January 30, 2009. The trial court denied the motion, and we affirmed. *Arbegast v. State*, 301 Ga. App. 462 (688 SE2d 1) (2009). In reaching our decision, we weighed against Arbegast the delay of 64 months between his arrest and the filing of his motion to dismiss. Id. at 466 (2) (c).

Arbegast argues that trial counsel was ineffective for causing this delay, but the testimony of trial counsel shows that the delay was strategic. When asked why he waited until 2009, counsel responded that there were "a lot of strategy decisions." One reason was that Arbegast was out on bond from his arrest until 2008. Counsel explained, "If he went to trial and lost, he would not be on bond. He would be in custody. So initially our decision … included the fact he was not in jail." Counsel added that his strategy "included the possibility [that] the time could work in his

21

favor." Counsel also thought it could be beneficial if the victims were older when the case went to trial because young children "certainly have an appeal to jurors that goes beyond what they say." He testified that Arbegast "was okay with [a] let's wait and see what happens" approach. Counsel testified that he filed the demand when he did because the prosecutor placed the case on the calendar without notice and he was "blind sided."

"The decision to file a speedy trial demand is usually tactical in nature. Reasonable trial strategy and tactics do not amount to ineffective assistance of counsel." *Bowling v. State*, 289 Ga. 881, 890 (5) (717 SE2d 190) (2011) (citations and punctuation omitted). Arbegast had not shown that counsel's decision regarding the timing of the speedy trial demand was unreasonable.

(f) *Failure to investigate the similar transactions*.

Arbegast argues that trial counsel was ineffective because he failed to adequately investigate the case, particularly the similar transactions. He contends that trial counsel admitted that he failed to investigate either similar transaction prior to trial, primarily because he was representing Arbegast pro bono and Arbegast was responsible for all costs. This is a mischaracterization of the testimony. Trial counsel actually testified only that he was not able to go to New York to investigate the

similar transactions. But the record discloses that he did take other action to investigate the similar transactions. In any event, Arbegast did not "make any proffer as to what further investigation would have uncovered. He thus cannot establish ineffective assistance of counsel on this ground." *Heard v. State*, __ Ga. __, __ (3) (e) (__ SE2d __) (Case No. S14A1925, decided March 2, 2015) (citation omitted).

(g) *Failure to effectively request funds for an investigator and expert witnesses.*

Arbegast argues that trial counsel was ineffective for failing to successfully request funds for an investigator, an expert in child interview techniques, and a medical expert to testify about herpes. As noted above, Arbegast did not make any proffer as to what further investigation would have uncovered. Nor did he make any proffer as to what an expert in child interview techniques or a medical expert would have testified. With "neither a proffer of what the testimony of the [investigator and] expert[s] would have been nor a showing that the trial court would have abused [his] discretion in denying a motion for funds to hire such an [investigator and] expert[s] . . . [Arbegast] has not shown that he was prejudiced by any trial counsel error in this regard." *Battise v. State*, 309 Ga. App. 835, 837 (2) (b) (711 SE2d 390) (2011) (citation and punctuation omitted). He has thus not established ineffective assistance

23

of counsel on this ground. *Lemery v. State*, 330 Ga. App. 623, 633 (2) (c) (768 SE2d 800) (2015) (appellant failed to show counsel was ineffective when she failed to timely request funds for an independent psychological examination because he failed to present evidence that an independent evaluation would have yielded conclusions that were contrary to those of the first evaluation); *Barstad v. State*, 329 Ga. App. 214, 219-220 (3) (764 SE2d 453) (2014) (appellant did not show trial counsel was ineffective for failing to request funds to hire an independent DNA expert because, although he argued that a DNA expert would have likely changed the outcome of his trial, he did not call an expert to testify at the motion for new trial hearing and thus did not establish that a DNA expert's testimony would have yielded a different result); *Thornton v. State*, 305 Ga. App. 692, 694 (1) (a) (700 SE2d 669) (2010) (defendant failed to show that trial counsel's failure to obtain a continuance to obtain fingerprint analysis prejudiced him because he did not call an expert witness at the motion for new trial hearing).

(h) *Failure to convey plea offer.*

Arbegast argues that trial counsel failed to convey a plea offer. Trial counsel testified at the motion for new trial hearing that he conveyed one plea offer, but he did not remember whether or not he conveyed another plea offer while Arbegast's

first appeal was pending, given that the trial court lacked authority to act at that time and he thought he would win the appeal. Arbegast has not shown prejudice because he has presented no evidence that there was a reasonable likelihood that he would have accepted the state's offer. *Brown v. State*, 291 Ga. 892, 899 (4) (734 SE2d 23) (2012).

*Judgment affirmed. Ellington, P. J., and Dillard, J., concur*.