**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/**

**November 2, 2012**

# In the Court of Appeals of Georgia

A12A1465. HOWARD v. THE STATE.                    AD-056C

ADAMS, Judge.

Following a jury trial, James Howard was found guilty of four counts of aggravated assault (family violence), one count of cruelty to children in the first degree, two counts of possession of a weapon during the commission of a crime, two counts of attempted murder and two counts of aggravated battery (family violence).[1] He filed a motion for new trial, which the trial court denied, and then the present appeal. He now argues that the trial court erred by admitting evidence of similar transactions and that the trial court should have granted a mistrial because of prosecutorial misconduct. Having carefully considered his claims of error, we now affirm.

---

[1] The trial court merged several of the counts for sentencing.

Although Howard does not challenge the sufficiency of the evidence to support his convictions, we will briefly summarize that evidence here. As the State aptly puts it, Howard and Tasha Taylor had been involved in a "tumultuous relationship" and there had been incidents of physical confrontations between them in the past. Howard and Taylor had lived together at one point, but Howard eventually moved out. Taylor's children, including her youngest twelve-year-old daughter A. H., also lived in the home and A. H. had interceded on previous occasions when Howard and Taylor would argue, and Howard had previously threatened both A. H. and Taylor.

On the day of the incident, Howard was at Taylor's house and they were talking about getting back together. Taylor testified she repeatedly told Howard that she just wanted to be friends and was tired of arguing and being accused of having affairs. After Howard had been there for several hours, A. H. returned home from school and she and Howard walked to a nearby store. During that walk, Howard asked her if he was the right man for her mother and she told him no.

When they returned, A. H. went upstairs to her room and Taylor and Howard continued to talk, with Taylor insisting their relationship was over and telling Howard he should leave, and Howard trying to talk her into continuing their relationship. Howard and Taylor were yelling at each other, and A. H. came back downstairs and

asked Howard to leave and told him to come back later to talk to her mother. At some point Howard asked Taylor if her final answer was that she did not want to take him back and when she said yes, he grabbed a knife and started stabbing her. A. H. realized what was happening and told him to stop, and he turned around and began stabbing A. H., inflicting wounds to her arm, back, leg and side. A. H. fell to the ground, and Taylor was able to put Howard in a "bear hug" while his back was to her. She yelled at A. H. to run and A. H. ran out the front door, where she started screaming for someone to call 911. A neighbor responded to A. H.'s screams and found her lying on her lawn, her jeans soaked in blood from her waist to almost her knees. The neighbor also testified that A. H. told her that her mother's boyfriend had stabbed her, and when police arrived A. H. also told them that her mother's boyfriend had stabbed her and her mother.

After A. H. ran out the door, Howard and Taylor continued to struggle and Howard broke free from Taylor and said "Bitch, you going to die tonight[]" and then proceeded to stab her multiple times before finally stopping, grabbing his jacket and running out the door. Although Taylor was going in and out of consciousness by the time the police arrived and found her in the apartment, she was also able to tell them that Howard had stabbed her. Additionally, Howard's jacket and a knife were

3

recovered from an apartment he visited after he left Taylor's apartment, and subsequent DNA testing revealed blood on the knife and jacket that matched A. H.'s DNA profile.

The State also introduced, over Howard's objection and following a hearing, evidence of two instances of similar crimes of domestic violence which occurred in 2003 and 2006. At trial the State sought to prove these prior crimes by admitting certified copies of Howard's convictions from both the 2003 and 2006 offenses and by introducing the testimony of the officer who initially responded to the scene of the 2003 incident and the testimony of the detective who investigated the 2006 incident.[2]

Howard also testified and denied that he stabbed either victim; rather, according to Howard, he and Taylor were arguing, she had a knife, which she was swinging at him, and she stabbed her daughter when A. H. stepped between them. Further, he said Taylor was not stabbed, but was cut on glass from a table that broke during the altercation.

Notwithstanding this testimony, which the jury obviously found not credible, we find the evidence, as outlined above as well as other evidence presented at trial, amply supported Howard's convictions.

---

[2] Howard's convictions were based on guilty pleas in both prior cases.

4

1. We now turn to Howard's first enumeration of error, in which he challenges the introduction of the 2003 and 2006 similar transactions. Howard does not challenge the trial court's finding that the prior offenses were sufficiently similar, or that the prior offenses were admissible to show bent of mind and course of conduct, but argues instead that proof of the crimes was insufficient because the victims themselves did not testify at trial.

As our Supreme Court has explained:

> [A]lthough a certified copy of a prior conviction generally is not sufficient, *by itself,* to prove the similarity of another crime, it is relevant evidence of that crime when taken together with testimony or other evidence regarding that crime. See, e.g., *Rose v. State*, 275 Ga. 214, 216 (563 SE2d 865) (2002); *Burgess v. State*, 264 Ga. 777, 784 (450 SE2d 680) (1994); *Nelson v. State*, 242 Ga. App. 63, 65 (528 SE2d 844) (2000). As demonstrated by the repeated approval of the use of certified convictions in proving similar transactions, such evidence is probative and is not per se unduly prejudicial. See *Untied States v. Walker*, 428 F3d 1165, 1170 (8th Cir. 2005) (rejecting contention that using a certified conviction to prove a similar transaction is unduly prejudicial because it "'gives a court's imprimatur upon the defendant's past criminality,'" explaining that '(a) certified conviction is the best evidence

5

of what occurred, . . . and it can be less prejudicial to a defendant than other forms of proof since it recites only the 'bare bones' fact of conviction rather than giving any details of the crime.").

(Emphasis added.) *Bell v. State*, 287 Ga. 670, 674 (2) (697 SE2d 793) (2010).

Further, our Supreme Court has found essentially the same type of evidence that was presented here to be sufficient to establish a similar transaction. *Rose v. State*, 275 Ga. 214, 216 (2) (563 SE2d 865) (2002) (prior crime sufficiently established by testimony of responding officer and certified copy of conviction). And although Howard also argues that the police officers' testimony was inadmissible hearsay and thus without probative value, the transcript shows that the officers confined their testimony to their observations of the victims' injuries and statements Howard made to them following the crimes; indeed the trial court specifically cautioned at one point that the prosecuting attorney needed to make clear to the witness to confine her testimony to what Howard said to her.[3] Compare *Terry v. State*,

---

[3] The officer who responded to the 2003 crime scene testified that Howard made a spontaneous statement to him that he and the victim were like "Bonnie and Clyde" and that he had to beat her up because she was drunk, and the detective who investigated the 2006 incident testified that Howard made an in-custody statement admitting that he hit the victim after she became physically aggressive toward him.

262 Ga. App. 654 (586 SE2d 357) (2003) (deputy sheriff's testimony about facts told to him by *other* officers was inadmissible hearsay).

Howard also states in his brief on appeal that he was deprived of the right to confront his accusers. However, this one sentence appears to be the sum total of a Confrontation Clause "argument," and we decline to elucidate Howard's argument on his behalf. Thus, based on the foregoing, we find this enumeration of error to be without merit.

2. Howard next contends that the trial court erred by failing to intervene as required by OCGA § 17-8-75 when the State sought to impeach him based upon attorney-client communications.

OCGA § 17-8-75 provides as follows:

> Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

As pertinent here, the transcript shows that the trial court called for a break during the prosecutor's cross-examination of Howard. When the proceedings

resumed, the prosecuting attorney first asked Howard if he had a chance to speak with his lawyer during the break, and Howard responded that he had a brief moment with him. The prosecuting attorney then said "Yeah, you were able to get your story together, weren't you?" and defense counsel objected, calling the question "outrageous." The trial court overruled the objection and the following exchange took place:

Prosecuting Attorney: "You were getting your story together, weren't you?

Howard: "No. I don't know what you're talking about, I'm just having a consult with my lawyer, I don't know what you mean by getting your story together."

Prosecuting Attorney: "Well, what did y'all talk about?"

Howard: "That ain't got nothing to do with you, that's between me and my lawyer."

Prosecuting Attorney: "So you won't tell us?"

Howard: "You ain't got nothing – that's between [me] and my lawyer."

Prosecuting Attorney: "All right."

Defense counsel then offered to answer the question, and the Court admonished both counsel that they were not to testify in the presence of the jury. And the court also "remind[ed] the jury that nothing the lawyers have to say is evidence in this case." The prosecuting attorney then moved onto another line of questioning.

8

We have little hesitancy in concluding that it was improper for the prosecuting attorney to ask Howard what he and his attorney talked about and to raise the implication that Howard and his attorney were fabricating a defense, and to imply Howard's failure to reveal his confidential conversation with his attorney meant he had something to hide. Further, we agree with Howard that the trial judge had an obligation to rebuke counsel, give curative instructions or grant a mistrial after a proper objection was made under the plain terms of OCGA § 17-8-75.

"In any event, however, reversal is not required, because it is highly probable that any error did not contribute to the verdict. See *O'Neal* [*v. State*, 288 Ga. 219, 223 (702 SE2d 288) (2010)] (explaining that harmless error analysis applies to alleged violation of OCGA § 17-8-75); *Walker v. State*, 281 Ga. 521, 524 (640 SE2d 274) (2007) (same)." *Dolphy v. State*, 288 Ga. 705, 708 (2) (b) (707 SE2d 56) (2011). Here, the trial court "reminded" the jury "that nothing the lawyers have to say is evidence in this case," and then instructed the jury in its final charge that the lawyers' questions were not evidence. Further, the evidence here was very strong, if not in fact overwhelming. "All things considered, including the strength of the State's evidence in this case, we conclude that it is highly probable that the trial court's (alleged) error

9

in failing to comply with OCGA § 17-8-75 did not contribute to the verdicts."

(Punctuation and citation omitted.) Id. at 708 (2) (b).

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*